SEIDENSPINNER v. METROPOLITAN LIFE INS. CO.

(Supreme Court, Appellate Division, Fourth Department.   March 11, 1902.)

1. LIFE INSURANCE—APPLICATION—WARRANTY—OTHER LIFE INSURANCE.
  Questions in an application for life insurance as to other insurance required the name of any company, order, or association issuing insurance, or declining to issue a policy, and inquired as to lapsed policies and pending negotiations for other insurance. Then followed the queries: "State amount of insurance you now carry on your life, with name of company or association by whom granted, and the year of issuing;" and, "Is there any other insurance on your life?" To these the applicant answered, "None." *Held*, that it·was for the jury to decide whether a failure to disclose membership in fraternal societies paying funeral expenses and sickness and death benefits, but issuing no certificate or policy, was a breach of warranty.

2. SAME—DIRECTION OF VERDICT—FINDING OF FACTS—PRESUMPTION.
  Where each party asked for the direction of a verdict, and neither asked to go to the jury on an issue as to whether there was a breach of the warranty in an application for life insurance, and the court directs a verdict, it will be presumed that the court found the facts in a manner to support the verdict.

3. SAME—EVIDENCE—ERROR.
  Where, in an action on a life policy, evidence is offered of the payment of sick benefits to the insured by a fraternal society, as indicating that he was sick at other times than those stated in his application, but counsel does not disclose such object in offering the evidence, and admits that it is not the best·evidence, there is no reversible error in excluding the evidence, even if it is competent.

Appeal from trial term, Erie county.

Action by Emelie R. Seidenspinner against the Metropolitan Life Insurance Company.   From a judgment for plaintiff, and from an order denying a new trial, ·defendant appeals.   Affirmed.

Argued before McLENNAN, SPRING, WILLIAMS, HISCOCK, and DAVY, JJ.

Seward A. Simons, for appellant.
Moses Shire, for respondent.

HISCOCK, J.   Plaintiff is seeking to recover the sum of $1,000 and interest upon a policy of life insurance issued by the defendant April 30, 1900, upon the life of Gottlieb Seidenspinner, and wherein plaintiff was designated as beneficiary.   The insured died October 28, 1900.   The only questions litigated upon the trial, or presented here, were and are whether the insured, in procuring said policy, was guilty of a breach of warranty which avoided it, through misstatements as to other policies of insurance in force upon his life, and as to sicknesses which he had suffered.   At the close of the trial, which was before a jury, each side asked to have a verdict directed in its favor.

Among the questions and answers contained in the application of the insured for the policy in question were the following:

"(a) Have you ever applied to any company, order, or association for insurance on your life, without receiving exact kind and amount of insurance applied for? (If yes, give particulars.) No.

"(b) State name of company, order, or association which has declined to issue a policy on your life, or postponed you. None.

"(c) State whether any company had refused to restore a lapsed policy on your life. (If yes, state particulars.) None.

"(d) Is any application or negotiation for other insurance on your life now pending or contemplated? (If yes, give particulars.) No.

"(e) State amount of insurance you now carry on your life, with name of company or association by whom granted, and the year of issue. (Enumerate each.) None.

"(f) If insured in this company, in ordinary, industrial, or intermediate, give policy numbers. None.

"Is there any other insurance in force on your life? None."

At and for some time prior to the date when said questions were asked and answered as aforesaid, plaintiff was a member of four associations, namely, Wuertemburger Suavia Benevolent Association, No. 1, of Buffalo, N. Y.; East Buffalo Wuertemburger Schwaben Verein, No. 2; Freiheit Court, No. 144, of the Foresters of America; and of one of the lodges of Odd Fellows. Under the constitution and by-laws of two of those associations, provision was made simply for the payment of certain funeral expenses, and it is hardly claimed that these provisions constituted an "insurance," within the meaning of the questions in the application. Stronger facts in behalf of the appellant are presented in connection with the Wuertemburger Suavia Benevolent Association, the constitution and certificate of incorporation of which were put in evidence. It appears from them that such association was incorporated under the act, chapter 368 of the Laws of 1865, as amended by chapter 668 of the Laws of the same year. By its certificate of incorporation it is provided that:

"The particular business or object of its creation is to accumulate, by initiation fees, quarterly dues, fines, and interest, a fund out of which to assist each other [the members] in times of sickness and death, as prescribed by the constitution and by-laws of the same."

The constitution provides that the object of the association shall be:

"To support one another in word and deed, in days of need and sickness; to bury the dead with honors, as well as to help the widows and orphans of deceased members according to means; and to cultivate moral education."

It further provided certain qualifications of membership, amongst which was the examination of every proposed candidate by a physician. Small quarterly dues were provided for, and then the further provision was made that at the death of each member "each brother is to pay one dollar, until the treasury shows the amount of $3,000." Under the heading, "In Regard to Benefits," it was provided that:

"At the death of a member in good standing for six months, the widow or legal heirs of the deceased shall receive the sum of $150; at the death of the wife of a member in good standing for six months, he shall receive from the treasury $50."

The question is whether membership by the insured in this association made his answers false, and avoided the policy. While such asso-

ciations are brought within some of the statutory provisions with reference to the supervision of the general subject of life insurance, and while they are sometimes spoken of as being engaged in the business of life insurance, it is apparent that that feature in the organization and existence of the association in question was, to say the least, very primitive. No separate fund was provided, out of which death losses should be payable. There probably was no practical way in which the association could enforce the payment by members of dues and assessments from which to pay the benefit sums which became payable upon the death of a member or his wife. No certificate of membership was issued, such as, in the case of many benefit and aid associations, takes the place of a regular insurance policy. The constitution designated the person to whom the sum payable upon the death of a member or his wife should go, and there was no power given to the member to name any other beneficiary. While the sum paid at death necessarily partook somewhat of the character of the moneys payable under a regular life insurance policy upon death, still evidently the predominating idea was that of aiding and helping members, rather than engaging in what might be regarded as a regular insurance business.

Having these considerations in mind, we come to the more particular consideration of the questions and answers. It is claimed by appellant that the insured especially was untruthful in answering "None" to the following two questions: "State amount of insurance you now carry on your life, with name of company or association by whom granted, and the year of issue;" and, "Is there any other insurance in force on your life?" We think that an examination of the first question, in connection with the other questions which preceded it, fairly warrants the conclusion that it indicated an insurance in some company or association which had issued some form of policy or certificate. We think, further, that men's minds might reasonably differ as to whether or not the last question, taken in connection with the others, did not mean some form of formal insurance, evidenced by policy or certificate, and might differ upon the issue whether this question fairly called upon the insured to state his connection with the benefit associations to which we have referred. It was very easy for the defendant, if it desired to, to ask such questions as would plainly and fairly call upon the applicant to disclose any membership in benefit or aid associations. The language of the questions, which were asked and prepared by itself, is to be construed most strongly against it. The insured should not be convicted of having given fraudulent and untruthful answers unless such inference is fairly warranted by the evidence. If, as we think, different inferences might be drawn as to whether the questions stated called for different answers and information than was given, then an issue of fact was presented for a jury to pass upon. Each party, however, asked the trial justice to direct a verdict. Neither side requested to go to the jury upon the question indicated. Under those circumstances, a verdict having been directed, it is to be presumed that the trial justice found upon any question of fact involved in such manner as to authorize and sustain the verdict. Kirtz v. Peck, 113 N. Y. 222, 21 N. E. 130; Provost v. McEncroe, 102 N. Y. 650, 5 N. E. 795.

Upon the trial the learned counsel for the defendant sought to have admitted certain evidence in regard to the payment to the insured of sick benefits by the associations already named, as indicating that he was sick at different and other times than admitted in his application. We think, however, if it should be assumed that such evidence was competent, that by his questions and offer he did not make it sufficiently clear that such evidence, if admitted, would have indicated sicknesses at other dates than those admitted in the application, to present error. Further than that, while excepting to the rulings of the court, the counsel admitted that the evidence sought for was not the best evidence which could be given of illness. We think an examination of all that took place at this point of the trial discloses that no such material error was committed as to call for reversal. In accordance with these conclusions, we think the judgment and order appealed from should be affirmed, with costs.

Judgment and order affirmed, with costs. All concur.